No. 40,794

WALTER KEIMIG, et al, *Appellants,* v. DRAINAGE DISTRICT No. 15-45 OF ATCHISON AND DONIPHAN COUNTIES, KANSAS, *Appellee.*

No. 40,795

STATE OF KANSAS, ex rel. JACK R. EULER (Substituted for ROBERT A. REEDER), County Attorney, *Appellant,* v. DRAINAGE DISTRICT No. 15-45 OF ATCHISON AND DONIPHAN COUNTIES, KANSAS, *Appellee.*

(325 P. 2d 816)

Opinion filed May 10, 1958.

*Robert A. Reeder,* of Troy, argued the cause, and *Jack R. Euler,* County Attorney, and *George T. Van Bebber,* of Troy, and *Steadman Ball, J. W. Lowry,* and *William E. Stillings,* all of Atchison, were with him on the brief for the appellants.

*Leonard O. Thomas,* of Kansas City, argued the cause, and *Arthur J. Stanley, Jr.,* and *Robert H. Bingham,* of Kansas City, *Maurice P. O'Keefe, Sr.,* and *Karl· W. Root,* of Atchison, and *Harry E. Miller,* of Hiawatha, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: This opinion covers the proceedings in two cases which were consolidated for trial in the court below, and were likewise consolidated on appeal in this court. One of the actions was brought in the name of the state on relation of the county attorney of Doniphan county, and hereinafter will be referred to as the county's action. The other action was brought jointly by several landowners who claimed that they would be damaged by the proposed plans of the defendant drainage district. This action will be

referred to herein as the landowners' action. We shall refer to the parties as plaintiffs and defendant as they appeared in the court below.

The defendant district lies northeast of the city of Atchison, with the county line between Atchison and Doniphan counties bisecting the district from east to west. The small town of Doniphan lies just north of the center of the district. The Missouri river bounds the district on the east and south, and the river bluffs on the north and west. The defendant district was organized in or about 1948, under G. S. 1949, Chapter 24, Article 6, for the purpose of protecting some 4,000 acres of land within the district against the waters of the Missouri river, Independence creek, which originally entered the district from the west, and also against the smaller Doniphan creek which entered the district from the north at or near the town of Doniphan. It may be noted at this time, that Independence creek drains a total of 156 square miles, while Doniphan creek drains only some four and one-half square miles in the immediate area just north of the district.

The plan adopted prior to the floods of 1951, was first the construction of a high dike or levee referred to as the Pick-Sloan levee— around the east, south and west borders of the district. This work was done in co-operation with the Corps of Army Engineers and cost some $2,000,000. Thus, the Missouri river and Independence creek were excluded from the area of the district. The latter creek was turned in a generally southerly direction by the Pick-Sloan levee and confined by the levee and the bluffs on the west until it reached the Missouri at the southwest corner of the district. Its course from approximately the county line between Atchison and Doniphan counties was further guided and controlled by the construction of an engineered flowway between the said levee and the bluffs.

Little Doniphan creek was controlled by carrying the stream in an easterly direction for a short distance and into a ponding basin. Waters from this ponding basin could be released by gates and allowed to flow southerly through a ditch and finally into the old Independence creek bed, all within the area of the defendant district.

Counsel for the parties were very helpful to the court in providing good maps of the district, but we feel that the opinion need not be lengthened by the inclusion of a map.

During the 1951 floods, Doniphan creek seems to have practically destroyed the above described ponding basin. It was then determined by the engineer of the defendant district in consultation with others that Doniphan creek should be diverted westerly from its point of entrance into the district to follow a course so as to enter Independence creek a short way outside the district, and some 3,500 feet north of the bridge on the county line and the point where Independence creek empties into the constructed flowway described above. In the adoption of this new plan for Doniphan creek the same procedure was followed as on the adoption of the original plan of reclamation. The new ditch for Doniphan creek would run some 5,100 feet in a westerly direction by south and pass through the Pick-Sloan levee, and then on and into Independence creek. A county road runs along in the same direction as the proposed ditch, and in the plan of the defendant and amendments thereto, it was decided that the county road should run on top of the dike to be placed on the north side of the ditch for some 1600 feet. The dike was to be constructed of sufficient width and the road graveled and restored to at least its present condition.

This plan as amended was formally approved by the Chief Engineer, Division of Water Resources, Kansas State Board of Agriculture all as provided by G. S. 1949, 82a-301. Plaintiff landowners and county were present at the hearings before the Chief Engineer and apparently protested rather vehemently. As shown by the findings of the Chief Engineer, he insisted on the improvement of the channel of Independence creek below the point of the proposed entrance of Doniphan creek and the beginning of the existing flowway along the Pick-Sloan levee, some 3,500 feet, more or less. Not only was this improvement ordered, but the Chief Engineer's order reads in part:

"The application for permit should be and is hereby granted subject to the following conditions:

"1. That the project generally, and the channel of Independence Creek in particular, *be maintained* in the condition specified by the plan for its construction and improvement." (Italics supplied.)

More concerning the improvement of the channel of Independence creek will appear later in this opinion.

In July, 1954, following the approval by the Chief Engineer of defendant district's application, the defendant proceeded to condemn lands and rights-of-way in Atchison and Doniphan counties,

and paid to the county treasurers of the two counties the total amount of the awards made by the appraisers in such proceedings.

Following acquisition of such rights-of-way, the defendant district and the Corps of Engineers, U. S. Army, commenced construction of the project pursuant to the approved plans and permit issued by the Chief Engineer of the Division of Water Resources. The clearing and improvement of channel of Independence creek, from the proposed entrance of Doniphan creek to the Independence creek bridge, was completed. Construction work proceeded on the remaining portion of the project into the spring of 1955.

During this time, both the landowners and the county filed their actions praying to have the work enjoined, and for other relief. Although we are advised the district court refused to stop the work by the issuance of temporary injunctions, it seems the county attorney of Doniphan county was able to compel the cessation of the work.

In the landowners' action, it was contended that they should not receive the additional burden of the waters of Doniphan creek, and they also contended that the existing Pick-Sloan levee acted as a dam impounding Independence creek floodwaters and thrusting them back upon the plaintiffs' lands.

In the county's action, it was sought to contend the diversion of Doniphan creek would pose additional hazards to existing bridge structures and roads, adding to maintenance problems, and that it would be unlawful for the defendant to elevate the county road up and place it upon the dike on the north bank of the proposed diversion for a distance of some 1600 feet.

The actions were tried before the Honorable John L. Gernon, judge of the Twenty-second Judicial District, who took the matters under advisement, but whose untimely death occurred before a decision in the cases had been made. Thereafter, the Honorable Robert H. Kaul, judge of the Thirty-sixth Judicial District, was duly assigned to dispose of the cases. Judge Kaul, after considering the transcript of the evidence taken before Judge Gernon, inspection of the area, and argument of counsel, issued his decrees denying injunctive relief to plaintiffs.

Plaintiffs appeal asserting error.

At the outset, we would direct attention to one point which plaintiffs have not mentioned in connection with this appeal. Since

Judge Kaul decided the cases from the transcript of the evidence introduced before Judge Gernon, and since these suits are in equity, this court has a considerable increased duty to make its own decision upon the facts disclosed by the record (*Karlan Furniture Co. v. Richardson*, 182 Kan. 756, 324 P. 2d 180, decided April 12, 1958; *Shriver v. Besse*, 163 Kan. 402, Syl. ¶ 1, 183 P. 2d 407; *In re Estate of Kemper*, 157 Kan. 727, at p. 734, 145 P. 2d 103; *Protheroe v. Davies*, 149 Kan. 720, at p. 729, 89 P. 2d 890).

However, this court has carefully considered the record herein, and is convinced that the learned trial judge was entirely correct in the careful and detailed findings of fact and conclusions of law which were filed in these cases. The same are approved and incorporated by reference although not made a part of this opinion. These findings will be available for anyone wishing to make a more complete study of this case as a part of the record in the State Library. We are pleased that Judge Kaul made a personal inspection of the area. In this, he had a considerable advantage as compared to this court, and his findings are entitled to even more weight for this reason.

In the county's suit, it is argued that defendant had no right to occupy the county road "longitudinally" for a space of 1600 feet. This argument is based upon the wording of G. S. 1949, 24-625. The plaintiff county asserts that from that section drainage districts are given only the power to go across a street or highway and cannot in any other way interfere with the highway. As the trial court concluded, it would seem the county has failed to construe the drainage district act as a whole. Particularly, the county would seem to have failed to note that the rule of strict construction usually applicable as to grants of authority to quasi-municipal corporations, would seem not to apply in this case. Particularly, see G. S. 1949, 24-637, where we find the following language:

"This act shall be liberally construed to promote the drainage and reclamation of wet, overflowed or submerged lands . . ."

Further attention is directed to G. S. 1949, 24-620, which reads in part as follows:

"That when any ditch, drain, improved watercourse, dike, levee or other drainage improvement located and established under this act crosses, drains or protects, either in whole or in part, any street, highway, public or corporate road or any railroad, or benefits any or either of said streets, road or railroad the board of supervisors shall apportion and set off to the county if a county road,

or township if a township road, or to a company if incorporated, or a railroad or to a city or village if a street or alley, a portion of the costs and expenses of the whole drainage improvement . . ."

The defendant district is not claiming any expenses from plaintiff county because of the protection given the road. Yet, the chief engineer held in abeyance, the further amendment of the project which new amendment would not have placed the county road on top of the dike. The engineer was of the opinion it would be of great benefit to the road to be raised above any possible floodwaters, and therefore awaited the outcome of these suits before the approval of any change of plan which would not so protect the road. The approval of the plan by the Chief Engineer, Division of Water Resources, is important as to the question of the defendant's power to make the improvements.

Actually, the rest of the complaints of the plaintiffs in both suits fail for want of evidence of any likely injury in the future from the proposed improvement plan.

All of the engineers who testified agreed that Independence creek drained an area of 156 square miles; that Doniphan creek had a watershed of only four and one-half square miles; they agreed that Doniphan creek would supply only seventeen and one-half percent of the water to be expected at the point where Doniphan and Independence creeks would join. It would seem to be further admitted that Doniphan creek water would constitute only three percent of the water, if all of the tributaries including Deer creek were included (see testimony of plaintiff county's engineer). Deer creek joins Independence creek just before the stream flows under the county bridge at the beginning of the flowway. This is still in the area of plaintiff landowners' land and is the county bridge referred to by plaintiff county in its petition.

Now, the plaintiffs would seem to rely upon the simple fact that the Doniphan creek water was brought over to the channel of Independence creek, where it would not otherwise have been. They would, it seems, ignore the work done on the channel of Independence creek, especially in the region of the plaintiff landowners' land, and between the proposed joining of Independence creek and the beginning of the flowway.

Plaintiffs would seem to wish us to ignore the undisputed evidence of reputable engineers of long experience, that the widening, deepening and clearing of obstructions from the channel of Inde-

pendence creek would increase the capacity of that channel by forty percent. They would ignore the fact that all of the engineers testified that the chance that a flood on Independence creek and on Doniphan creek would coincide as to time when the crests would reach the channel was most unlikely; that the nearer water in Doniphan creek would almost surely run out of the channel before the water from greater distance in the Independence creek watershed reached this particular part of the river. The trial court said in No. 30 of that court's findings of facts:

"The possibility of a coincidence of peak flood crest on Doniphan and of peak flood crest on Independence creek, at the point of the proposed junction, is so remote as to be purely speculative."

While we agree with the trial court in the above finding, suppose there should occur a "fifty year" flood or a "hundred year" flood as spoken of by the engineers. At any rate, suppose both creeks were at crest at the same time at the point of union. We would have seventeen and one-half percent more water than if Doniphan water were not coming into the stream, but it would seem to be a mathematical proposition that even then, the improved channel would have an increased carrying capacity of twenty-two and one-half percent over and above the extra Doniphan creek water, than it would have had if the plan for improvement had not been carried out.

It is hard to understand why all the plaintiffs will not be benefited by the construction of this project. We know of no cases, and plaintiffs cite none, which hold that a riparian owner may sue, when the water in a river channel is increased, if that increase of water does him no harm. There are many cases holding the increase of water upon a landowner's land is actionable, if that water will cause damage which otherwise would not occur. Likewise, there are many cases holding that a riparian owner may sue to prevent the taking of water from the watershed of a stream, since he is thus prevented from using the water and will be injured.

As to the claim in the landowners' suit that the Pick-Sloan levee acts as a dam backing the water on to their land, practically the only evidence which had any bearing upon this matter was the testimony that the flood in 1951 was two and one-half feet higher at the point of the levee than it would have been if the levee had not been there and the water could have escaped on east over the land of the defendant district. Just how much higher the water was on plaintiff landowners' property was not shown, nor was any

estimate attempted as to what height the water would have reached had the improved channel of Independence creek been in existence at that time.

This has been mainly a fact case, and what has been said would seem to dispose of the plaintiffs' contentions. All of the contentions not specifically mentioned have been considered and found untenable.

The decrees of the district court are hereby affirmed.