No. 68,762

IN THE MATTER OF THE ADOPTION OF BABY BOY B.

(866 P.2d 1029)

Opinion filed January 21, 1994.

*Paula K. Casey*, of Alexander, Floodman & Casey, Chartered, of Wichita, argued the cause and was on the brief for appellant natural mother.

*Kevin M. Hill*, of Finley, Miller, Cashman, Weingart & Schmitt, of Hiawatha, argued the cause, and *John L. Weingart*, of the same firm, was with him on the briefs for appellants/prospective adoptive parents.

*Elizabeth Lea Henry*, of Fletcher & Mathewson, P.A., of Wichita, argued the cause and was on the brief for appellee natural father.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal from the district court's order denying the petition of the couple who sought to adopt Baby Boy B. The natural father had opposed their petition, and they had sought to terminate his parental rights on the ground that he had failed, without reasonable cause, to provide support for the mother during the six months prior to the child's birth. The Court of Appeals affirmed the district court's denial of the petition in an unpublished opinion filed June 18, 1993. We granted the couple's petition for review.

Baby Boy B. was born on March 20, 1992. His mother and father were not married. His mother consented to his adoption by the couple; his father did not.

The couple who sought to adopt Baby Boy B. filed a petition for adoption in the district court and were granted custody of the child pending the hearing on their petition. Their amended petition for adoption alleges that the child's father "has failed and refused to consent to this adoption." The couple sought to have his parental rights terminated. In his answer, the father admitted being the father of the child and asserted his rights as a parent.

The hearing on the couple's petition was held on May 7, 1992, with the Honorable Keith W. Sprouse presiding. The theory which the couple sought to develop was that the father's consent was unnecessary, pursuant to K.S.A. 1992 Supp. 59-2136(h)(4), for the reason that after having knowledge of the pregnancy, he failed without reasonable cause to provide support for the mother during the six months prior to the child's birth. At the conclusion of the hearing, the district court judge took the matter under advisement.

On June 2, 1992, the Honorable Paul E. Miller was assigned to "hear and determine" this case. The record does not contain an explanation for the change.

On July 16, 1992, a journal entry of judgment was filed, denying the petition for adoption, setting aside the temporary custody order, and placing custody of the child with the father. The district court denied the couple's request for a stay pending appeal, and it was ordered that the transfer of custody occur on July 17, 1992.

Two issues are raised by the couple in this appeal:

1. What is the proper standard of appellate review?
2. Did the father provide support to the mother during the six-month period before the child was born within the meaning of K.S.A. 1992 Supp. 59-2136(h)(4)?

We will first address the issue of the proper standard of appellate review. In the only published opinion reviewing a district court's decision on parental rights pursuant to K.S.A. 1992 Supp. 59-2136(h)(4), the Court of Appeals stated: "The controlling issue is whether the findings of fact by the trial court are supported by substantial competent evidence of clear and convincing quality." *In re Adoption of Baby Boy S.,* 16 Kan. App. 2d 311, 312, 822 P.2d 76 (1991). The requirement that the evidence be "clear and convincing" was specified by the legislature. In *Baby Boy S.,* the Court of Appeals applied general principles which had been stated by this court in *In re Adoption of F.A.R.,* 242 Kan. 231, 747 P.2d 145 (1987). 16 Kan. App. 2d at 312. In *F.A.R.,* we held:

"In an adoption proceeding, the question of whether an individual has failed or refused to assume the duties of a parent for the required period of time pursuant to K.S.A. 1986 Supp. 59-2102(a)(3) is ordinarily a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing." Syl. ¶ 1.

"When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below." Syl. ¶ 2.

"Generally speaking, adoption statutes are strictly construed in favor of maintaining the rights of natural parents in those cases where it is claimed that, by reason of a parent's failure to fulfill parental obligations as prescribed by statute, consent to the adoption is not required. [Citation omitted.]" Syl. ¶ 5.

"In making a determination in an adoption proceeding of whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances must be considered." Syl. ¶ 6.

"Before a child can be adopted without the consent of one of the natural parents, the facts warranting an exception as prescribed by statute must be clearly proven." Syl. ¶ 10.

On the appeal of the present case, the natural father advocates that the standard of review which this court applied in *F.A.R.* and which the Court of Appeals adopted in *Baby Boy S.* is controlling in the present case. The couple and the mother rely on the rule that review should be de novo when the controlling facts are presented by a written record, the reason being that the appellate court has as good an opportunity to consider the record and determine the facts as did the trial court.

There is an exception to the general rule that an appellate court will decide the facts for itself on a written record. The exception has been applied where the testimony of one witness must be credited over that of another. In *Boese v. Crane,* 182 Kan. 777, 780, 324 P.2d 188 (1958), this court stated the limited application of the rule:

"This rule, however, is not universally applied under all conditions. It has been applied where *all* the evidence is in written form [citation omitted]; where the only oral testimony adduced has little, if any, bearing upon the principal question presented and all other evidence is in written form [citation omitted]; but has not been applied to testimony written in form where the court would be called upon to disregard the testimony of one witness and accept as true the testimony of others [citations omitted]."

The Court of Appeals in the present case noted:

"The record available to Judge Miller is similar to the record provided to the district court in *Karlan Furniture Co. v. Richardson,* 182 Kan. 756, 324 P.2d 180 (1958). *Karlan* was a replevin action decided on the basis of documentary evidence, including a written stipulation as to the testimony that specified witnesses would give if they were present at trial. The Supreme Court described the nature of that stipulation:

'It should be noted at this point that the stipulation last above mentioned contains statements by witnesses for both the plaintiff and the defendants; that it gives their respective views on controverted phases of the lawsuit; and that in no sense is it to be regarded as an agreed statement of facts. The most that can be said for it is that, while it presented the evidence of each witness in documentary form, it permitted the court to weigh the testimony of all witnesses and decide for itself the weight to be given such testimony in reaching its decision on the decisive issues involved.' 182 Kan. at 757.

In view of the record presented to the district court, the Supreme Court rejected a request for de novo review:

'In reaching the conclusions last above announced we have not overlooked contentions strenuously advanced by appellants to the effect that since the

only evidence of record is in documentary form this court is required to decide for itself what the facts established, substantially in the same manner it would if this were an original case. We have so held. [Citations omitted.] It must be remembered, however, such rule is subject to some elasticity under certain conditions. In that connection we have pointed out that even though we determine the facts from the printed page we cannot disregard the testimony of one witness and accept as true the testimony of others but, under such circumstances, should follow the ordinary rule, giving credence where the trial court gave credence, unless its findings of fact are illogical, improbable and unwarranted.' 182 Kan. at 760."

In their petition for review and in a supplemental brief filed in this court, the couple contend that the record in this case does not contain conflicting testimony. They argue, therefore, that the present case fits the rule for de novo review of decisions based on a written record rather than the exception for a written record containing conflicting testimony. They focus on the example of disputed facts set out in the Court of Appeals' opinion: "For example, natural father testified that he offered to give money to natural mother, but that she refused to accept the funds. Natural mother testified that natural father merely offered to loan her money, on the condition that she not give the baby up for adoption."

The couple contend that the testimony of the mother and father is not conflicting in that he stated what he said and she stated how she interpreted what he said. Their argument is okay as far as it goes. The issue on which the father and mother were testifying is whether or not the father offered support. If, as the couple advocate, the district court had simply accepted the testimony of both witnesses as true, this factual issue would not have been resolved. In order for the district court to have accepted as true both witnesses' testimony *and* made this factual determination, it would necessarily have accepted as fact that the father offered support because that is what he testified he did. The unavoidable corollary is that the mother misinterpreted his intent when she assumed that the offer was conditional.

In addition, the couple have focused exclusively on one portion of the testimony. Thus, they have not demonstrated that there are not other instances of testimony "where the court would be called upon to disregard the testimony of one witness and accept as true the testimony of others." *Boese v. Crane*, 182 Kan. at

780. In fact, there are other instances where the testimony of these witnesses disputes essential facts. For example, the mother testified that she used her food stamps to buy food for the father, his three boys, and herself in September and October 1991. The father testified that she used her food stamps to buy only their milk and that she sold the remaining stamps to her former husband.

The Court of Appeals was not impressed with the cases relied upon by the appellants, stating:

"The cases relied on by appellants to justify de novo review are distinguishable. *Stith v. Williams*, 227 Kan. 32, 605 P.2d 86 (1980), was a land ownership case tried to the district court on an agreed statement of facts. 227 Kan. at 34. *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 336, 592 P.2d 74 (1979), a declaratory action arising out of a lease, was 'submitted to the trial court on the oral statements and stipulations of counsel and documentary evidence. No witnesses testified.' Finally, *In re Estate of Broadie*, 208 Kan. 621, 493 P.2d 289 (1972), concerned the validity of an antenuptial agreement and a consent to a will. The Supreme Court concluded that the uncorroborated claims of a widow that her husband had undervalued his property were insufficient to set aside an antenuptial agreement on the grounds of fraudulent concealment. The *Broadie* decision mentions only the deposition testimony of the widow. Although a de novo review is employed, the decision does not indicate that the record contained conflicting testimony."

The Court of Appeals reviewed *Keimig v. Drainage District*, 183 Kan. 12, 325 P.2d 316 (1958), and found it is procedurally dissimilar to the present case and not controlling authority for de novo review in the present case. It stated:

"Notably lacking in *Keimig* is a clear indication that the court resolved factual disputes arising from conflicting testimony. . . . The *Keimig* opinion does not reflect a process of weighing evidence, preferring one witness's testimony over that of another, or disregarding one witness in favor of another. See *North River Ins. Co. v. Aetna Finance Co.*, 186 Kan. 758, 759, 352 P.2d 1060 (1960) (noting that *Keimig* references numerous authorities for the rule permitting de novo review of stipulated facts)."

In *Giblin v. Giblin*, 253 Kan. 240, 253-54, 854 P.2d 816 (1993), we said:

"The rationale behind not allowing appellate de novo determination of facts in a case involving witness testimony is that we do not weigh conflicting testimony. There was no conflicting evidence presented, written or oral, to contradict York's testimony about her conversations with Readey and Lin-

ville. Thompson did not even cross-examine York. York's testimony is arguably no different than the affidavits submitted. Additionally, at the November 6, 1991, hearing, the parties agreed there was sufficient written evidence for the trial court to decide the case. The trial court even noted this in its memorandum decision. It was at the court's request that York testified. In this situation, we can determine de novo what the facts establish.

"The appellees also contend this court cannot determine de novo what the facts establish because the standard of review is abuse of discretion. The appellants' argument concerns the manner in which this court reviews the evidence, not the standard of review. Abuse of discretion—whether the trial court's actions were arbitrary, fanciful, or unreasonable or whether any reasonable person would agree with the trial court's actions—necessitates a review of the evidence. In so doing, this court either can determine de novo what the facts establish or this court can determine if the statutory requirement of having a reasonable basis in fact has been met. Abuse of discretion and a de novo determination of what the facts establish are not necessarily mutually exclusive."

We agree with the Court of Appeals that the record does include conflicting testimony, and thus the standard of review is whether substantial competent evidence exists to support the district court's findings.

We therefore must determine whether substantial competent evidence exists to support the district court's finding that the father did provide support to the mother during the six-month period before the child was born, within the meaning of K.S.A. 1992 Supp. 59-2136(h)(4). The district court construed K.S.A. 1992 Supp. 59-2136(h)(4) to require the father to provide support "of some consequence and reasonable under all the circumstances existing in this case." The couple contended that the district court used an incorrect standard of "support" in applying the statute.

K.S.A. 1992 Supp. 59-2129(a)(1) and (2) provide: "Consent to an independent adoption shall be given by: (1) The living parents of the child; or (2) one of the parents of the child, if the other's consent is found unnecessary under K.S.A. 59-2136." K.S.A. 1992 Supp. 59-2136(a) provides: "The provisions of this section shall apply where a relinquishment or consent to an adoption has not been obtained from a parent and K.S.A. [1992 Supp.] 59-2124 and [K.S.A. 1992 Supp.] 59-2129, and amendments thereto, state that the necessity of a parent's relinquishment or consent can be determined under this section." K.S.A. 1992 Supp. 59-2136(h) provides:

"When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:

(1) The father abandoned or neglected the child after having knowledge of the child's birth;

(2) the father is unfit as a parent or incapable of giving consent;

(3) the father has made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth;

(4) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior the child's birth;

(5) the father abandoned the mother after having knowledge of the pregnancy;

(6) the birth of the child was the result of rape of the mother; or

(7) the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition.

"In making a finding under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

The legislature limited the circumstances in which an adoption may be granted without the consent of the father to those seven specified in 59-2136(h)(1) through (7). In the only reported Kansas appellate opinion which has construed 59-2136(h)(4), *In re Adoption of Baby Boy S.*, the Court of Appeals stated:

"This case is analogous to cases where the trial court must determine if a parent has failed or refused to assume the duties of a parent for two consecutive years prior to an adoption pursuant to K.S.A. 1990 Supp. 59-2136(h)(7) (repealing and replacing K.S.A. 1989 Supp. 59-2102[a][3]). The tests and rules applicable in those instances are equally applicable when a trial court must determine whether a father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth." 16 Kan. App. 2d at 313.

The "tests and rules" applicable to subsection (h)(7) are those which are set out in this court's decision in *F.A.R.*, 242 Kan. 231. In *F.A.R.*, we held that neither the fitness of the parent nor the best interests of the child is a controlling factor. We said:

"[T]his court has consistently held that adoption statutes are to be strictly construed in favor of maintaining the rights of a natural parent, especially where it is claimed that consent to adoption is not required due to the natural parent's failure to fulfill parental obligations. *E.g., In re Sharp*, 197 Kan. 502, 504, 419 P.2d 812 (1966). This court has also held that a parent's reasons, if any, for inaction may be properly considered by the court in support of an answer to an adoption petition. *In re Sharp*, 197 Kan. at 508.

. . . .

"In considering whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances must be considered. . . . [I]t is for the trial court to determine the sufficiency of such efforts. . . . Whether the efforts made by appellee were sufficient to meet his parental obligations under all the circumstances will be considered in connection with appellant's attack upon the sufficiency of the evidence. We hold that it was not error for the trial court to take into consideration the limiting aspects of appellee's confinement in determining whether he had failed to assume his parental duties.

". . . The ultimate finding that the natural mother interfered with appellee's rights to maintain contact with his sons was supported by the evidence, when it is viewed in the light most favorable to appellee. . . . The record contains support for the trial court's finding that the natural mother interfered with appellee's rights to keep in contact with his sons. However, the court also recognized the natural reluctance of the mother to take two small children to the prison to visit and was sympathetic to her. It does not appear that the trial judge's finding of fact on this point was a principal factor in his ultimate decision in this case. It merely was one of the circumstances considered in the overall decision and was certainly not a controlling factor." 242 Kan. at 235-37.

The couple urge this court to measure the adequacy of the father's support of the mother by reference to the Internal Revenue Code or the Kansas Child Support Guidelines (Administrative Order No. 83 [1993 Kan. Ct. R. Annot. 71]) or by balancing one party's need against the other's ability to pay, as if computing an award of maintenance.

In this regard, the Court of Appeals stated:

"These arguments are not persuasive. Appellants offer no authority that would justify the court in adding to the statute a rigid standard which the legislature has not chosen to use. Had the legislature wished to incorporate the Internal Revenue Code or the Child Support Guidelines into the statute,

it could have done so. In fact, a recent amendment to 59-2136, not applicable here, creates a rebuttable presumption that a father has failed or refused to assume the duties of a parent if he has 'knowingly failed to provide a substantial portion of the child support as required by judicial decree.' K.S.A. 1992 Supp. 59-2136(h). That amendment references a child support order, not merely an amount which might be calculated on the basis of the guidelines."

The Court of Appeals agreed that the decision in *Baby Boy S.* is controlling in the present case, stating:

"The case-by-case approach adopted in *In re Adoption of Baby Boy S., In re Adoption of F.A.R.*, and *In re Adoption of B.J.H.* requires that we reject a rigid test for measuring adequate support. The language of the statute does not require an inflexible level of support. In fact, *In re Adoption of F.A.R.* instructs 'the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability.' 242 Kan. at 236. The trial court here did not err in applying a 'reasonable under all the circumstances' test to decide natural father had provided support to natural mother."

We agree. In the present case, the focus is on the wording of 59-2136(h)(4). As the father correctly points out, the legislature did "not state that it must be shown that the father failed to *support* the mother but rather that he failed to *provide support for her.*" The language used indicates that some but not a specific amount of support is required. The father's argument is that "support" within the meaning of this statute is an individualized concept and that it need be only a contribution toward, rather than the full amount required for, the mother's living expenses. That the legislature contemplated only a reasonable contribution is supported, not only with respect to the wording of subsection (h)(4), but also when all parts of (h) are read together. Other parts require the district court to find, for example, that the father raped the mother, that the father abandoned the mother or the child, or that the father is unfit as a parent. A father who contributed to the support of the mother but failed to fully support her before the birth of the child would not seem to be in the same category or to deserve the same sanction—having his parental rights terminated—as those who raped and abandoned and were unfit. The reasoning of *Baby Boy S.* and *F.A.R.*, in measuring the adequacy of the support on a case-by-case basis

according to the circumstances in each case, applies in the present case. As the trial court correctly held:

" 'Support,' as that term is set forth in K.S.A. [1992 Supp.] 59-2136(h)(4), does not mean all support of the mother, nor is it sufficient if it is incidental or inconsequential in nature. The 'some' support standard suggested by counsel for the natural father seems reasonable to the Court. Support must be of some consequence and reasonable under all of the circumstances existing in the case."

The test to be applied in determining if the natural father's consent is necessary under K.S.A. 1992 Supp. 59-3136(h)(4) is one of reasonableness under all the relevant surrounding circumstances existing in the case.

In the present case, the surrounding circumstances relevant to the father's providing support to the mother during the last six months of her pregnancy can be summarized as follows: During the fall of 1991, the mother and father lived together for approximately six weeks. Each had three children by a previous marriage. The father's children lived with him. During the six-month period before the child whose adoption is at issue was born, the mother's three children lived with their father, her former husband. When she was not living with the father, the mother lived with her former husband. The mother did not consider that the father was contributing to her support when she lived at his house because he would have incurred the rent and utilities whether she had been there or not. She estimated that the father spent during that time $75-80 on her for entertainment and restaurant meals and $100 on maternity clothes. She testified that in September and October 1991 she bought food for the father, his children, and herself with her food stamps. The father testified that she bought their milk with her food stamps and sold the remaining food stamps to her former husband.

The record contains four checks which total $130 that the father wrote to the mother in the fall of 1991. The mother testified that she could not recall the reasons for the payments.

The mother became employed in mid-October. In November, she no longer received food stamps because her income exceeded eligibility. On Thanksgiving Day, she moved in with her sister. The mother paid rent to her sister.

The State paid her medical expenses. The mother testified that she and the father discussed early in her pregnancy the possibility of "taking on the bill ourselves" so that she could go to the medical care provider of her choice, but that "we chose not to do it that way."

After the mother moved in with her sister, she continued to see the father. She spent Christmas with him at his parents' home, and they attempted to get married, but they had failed to obtain a marriage license. He gave her boots and a sweater for Christmas. In January, he wrote a check to her for $31. He took her out to eat approximately once a week in February and March. He sent her flowers on one occasion. They used her car when they went out together, and he filled her car with gasoline approximately three times in February.

The mother testified that several weeks before Baby Boy B. was born, the father offered her $1,000 from his anticipated income tax refund. He also offered to pay her approximately $1,100 for living expenses for the month after the baby was born. She indicated that she refused these offers of assistance because she believed them to be loans conditioned on her not giving up the baby for adoption. The father testified that the offers were unconditional and that he never followed through on them because the mother refused the offers. The father testified that he assisted her to the extent she would allow him to do so. He further testified that the mother said she could not give the baby up for adoption if she took money from him.

It is clear from the record that the mother has continuously insisted that the baby be given up for adoption. The father, to the contrary, has steadfastly insisted on raising the child just as he is raising three children from a previous marriage. This was the major source of dissension between the two and was the reason stated by the mother for not accepting the assistance offered by the father. The district court properly considered her refusal as a factor in determining if the father provided support to the mother. The district court found her refusal a reasonable cause for the natural father's not paying more support than he did.

Reviewing the evidence in the light most favorable to the father, who prevailed in the district court, we conclude that sub-

stantial competent evidence exists to support the holding of the district court.

The judgments of the Court of Appeals and the district court are affirmed.