No. 86,130

STATE OF KANSAS, *Appellee*, v. SUSAN K. BROWN, *Appellant*.

(35 P.3d 910)

 Opinion filed December 14, 2001.

*Michael K. Lehr*, of Wichita, was on the brief for appellant.

*Richard A. Olmstead*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Susan K. Brown was convicted in a bench trial on stipulated facts of one count of payment for adoption in violation of K.S.A. 59-2121(a), a severity level 9 person felony, and one count of prohibited offers and placement of children for adoption in violation of K.S.A. 59-2123, a class C misdemeanor. Defendant was sentenced to two consecutive 12-month terms of probation and appeals from her convictions. In her brief, defendant

states the issue as being: "The issue in this case is whether the district court correctly interpreted the provisions of K.S.A. 59-2121, and K.S.A. 59-2123, based upon the stipulated facts of the case to find the defendant, Susan K. Brown, guilty of violating each statute's respective criminal provisions?"

The above statement of the issue and the brief's concluding paragraph requesting that the conviction of the misdemeanor be reversed are the only references in the brief to the defendant's conviction of a violation of K.S.A. 59-2123. An issue which is not briefed is deemed abandoned. *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999). Accordingly, we limit our consideration to whether the stipulated facts support defendant's conviction of a violation of K.S.A. 59-2121(a).

## FACTS

Extensive stipulations of fact were entered into by the parties. There was no other evidence admitted. The basic issue is whether these stipulated facts establish a violation of K.S.A. 59-2121. This is essentially a matter of statutory interpretation, as there is no significant conflict within the stipulated facts. Given the very narrow issue before us, it is appropriate to highly summarize the stipulated facts.

Defendant operated an escort service named "Blaze" out of her home in Wichita. Upon hearing that a former employee, Samantha Pruitt, had given birth to a child in Oklahoma and was considering putting the child up for adoption, defendant told her to wait. Defendant then went to Oklahoma and brought the mother and child to her home.

Defendant made arrangements for another employee (Teresa Lawrence) and Tina Black to acquire the child from Pruitt in exchange for a new car, $800, and a cell phone. Defendant was to receive half of the cash as compensation for her part in putting the deal together. The transfer of the child took place, but none of the agreed-upon compensation was paid or delivered. Pruitt became dissatisfied with the delay and complained to a friend who happened to be the girlfriend of a police officer.

Ultimately, Pruitt and the police officer reported the incident. In cooperation with the Wichita Police Department, Pruitt made a monitored telephone call to the defendant, wherein the following was said:

"Pruitt: So uh . . . what happened to the money that I was supposed to get and the car and cell phone. What did they . . . .
"Brown: Hey, you can get all that when you get the fucking uh . . . uh . . . birth certificate.
"Pruitt: . . . did they just . . . but what about you . . . your half of the money, did they give it all to you?
"Brown: Not yet they haven't. They're waiting for the birth certificate. I get to wait just like you get to wait.
"Pruitt: Yeah.
"Brown: You know, you produce what you're suppose and everything will go cool. All you have to go over you fucking . . . boyfriend's house and get it out of the garage . . . he has to wait 21 days . . . that's bullshit."

The conversation then disintegrated into name calling.

It was further stipulated: "None of the money was intended for any bill or expense incidental to birth or adoption proceedings." Ultimately, the child was found and taken into protective custody.

## STANDARD OF REVIEW

Our case law, as generally applied in civil cases, states that appellate courts have de novo review of cases decided on the basis of documents and stipulated facts. *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997); *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987).

A substantial competent evidence standard of review is used in cases with stipulated facts when the record includes conflicting testimony or when the case involves oral testimony that is conflicting. *In re Adoption of Baby Boy B.*, 254 Kan. 454, 456-60, 866 P.2d 1029 (1994); *Bell v. Tilton*, 234 Kan. 461, 467-68, 674 P.2d 468 (1983).

Interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998).

Our review herein is unlimited.

## THE STATUTE

K.S.A. 59-2121 provides:

"(a) Except as otherwise authorized by law, no person shall request, receive, give or offer to give any consideration in connection with an adoption, or a placement for adoption, other than:

(1) Reasonable fees for legal and other professional services rendered in connection with the placement or adoption not to exceed customary fees for similar services by professionals of equivalent experience and reputation where the services are performed, except that fees for legal and other professional services as provided in this section performed outside the state shall not exceed customary fees for similar services when performed in the state of Kansas;

(2) reasonable fees in the state of Kansas of a licensed child-placing agency;

(3) actual and necessary expenses, based on expenses in the state of Kansas, incident to placement or to the adoption proceeding;

(4) actual medical expenses of the mother attributable to pregnancy and birth;

(5) actual medical expenses of the child; and

(6) reasonable living expenses of the mother which are incurred during or as a result of the pregnancy.

"(b) In an action for adoption, a detailed accounting of all consideration given, or to be given, and all disbursements made, or to be made, in connection with the adoption and the placements for adoption shall accompany the petition for adoption. Upon review of the accounting, the court shall disapprove any such consideration which the court determines to be unreasonable or in violation of this section and, to the extent necessary to comply with the provisions of this section, shall order reimbursement of any consideration already given in violation of this section.

"(c) Knowingly and intentionally receiving or accepting clearly excessive fees or expenses in violation of subsection (a) shall be a severity level 9, nonperson felony. Knowingly failing to list all consideration or disbursements as required by subsection (b) shall be a class B nonperson misdemeanor."

## RULES OF STATUTORY CONSTRUCTION

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent

behind it and will not read such a statute so as to add something not readily found in the statute. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted. *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998).

Criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998).

Defendant contends the stipulated facts do not support her conviction herein as they do not establish that she was guilty of knowingly and intentionally "receiving or accepting clearly excessive fees or expenses in violation of subsection (a)," as required by K.S.A. 59-2121(c).

## DISCUSSION

At this point, it is appropriate to discuss the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*, of which K.S.A. 59-2121, the statute before us, is a part. The Act was revised extensively in 1990.

The pertinent portions of K.S.A. 59-2121 address payment involved in adoptions, limitations thereon, and the criminal penalties for violation of such limitations. Specifically, K.S.A. 59-2121(a) states, in part: "[N]o person shall request, receive, give or offer to give any consideration in connection with an adoption, or a placement for adoption." The subsection then proceeds to list the exceptions to this prohibition, allowing for reasonable fees for agencies and professionals, actual and necessary expenses incident to placement or proceedings, actual medical expenses of the mother and child, and reasonable living expenses of the mother incurred during or as a result of the pregnancy. Then, K.S.A. 59-2121(b) requires that a detailed accounting be given to the court at the time the petition for adoption is filed. Finally, K.S.A. 59-2121(c) states the criminal penalties:

"Knowingly and intentionally receiving or accepting clearly excessive fees or expenses in violation of subsection (a) shall be a severity level 9, nonperson felony. Knowingly failing to list all consideration or disbursements as required by subsection (b) shall be a class B nonperson misdemeanor."

Here, it is undisputed that none of the exceptions set out in K.S.A. 59-2121(a) apply. Defendant was convicted of "[k]nowingly and intentionally receiving or accepting clearly excessive fees or expenses in violation of subsection (a)."

The statutory predecessor to K.S.A. 59-2121 was K.S.A. 1988 Supp. 59-2278c, which did not provide a penalty section (c). Apart from this penalty section, when K.S.A. 59-2278c was repealed and replaced by K.S.A. 59-2121, the statutory changes concerned how reasonable fees should be determined, e.g., they "shall not exceed customary fees for similar services when performed in the State of Kansas." K.S.A. 59-2121(a)(1). Thus, for purposes of this appeal, the penalty section is the only relevant change made in 1990.

The Judicial Council Family Law Committee comments to the Kansas Adoption and Relinquishment Act discuss the 1990 changes. The committee's comments relevant to this statute are quoted below; in brackets are the comments added at a later time by an interim legislative committee.

"This section [K.S.A. 59-2121] closely follows K.S.A. 59-2278c. The phrase '. . . not to exceed customary fees in the locality for similar services by professionals

of equivalent experience and reputation . . .' has been added in (a)(1). This is intended to discourage the marketing of children by limiting the profitability of such activity. Also, there are terminology changes from the present statute to clarify that this section applies to all adoptions.

"[In regard to subsection (a)(1), the Interim Committee at the request of the Family Law Committee provided that fees for legal and other professional services would be evaluated by the court in terms of what is customary 'where the services are performed.' The Senate Committee amended the provision so that such fees shall be evaluated in terms of what is reasonable 'in the county of venue.' This approach was extended by the Senate Committee to subsections (a)(2) and (3). At a minimum, it appears inconsistent to have both phrases 'in the county of venue' and 'where the services are performed' in (a)(1). The Family Law Committee concluded that if legitimate, valuable services are performed out-of-state in connection with an adoption, it does not seem objectionable for the court to review such fees in terms of what is customary where the services are performed. To disallow such fees solely because they are beyond what is customary in the county of venue in Kansas would certainly inhibit certain nonresidents from being able to adopt in Kansas. We suspect that the underlying concern motivating the recommendation for the limiting provisions relates to the inability of the Kansas court to enforce its determinations in regard to fees which are clearly excessive or of questionable legitimacy. The addition of subsection (c) by the Senate Committee would appear to directly address this issue of enforcement.]"

It is clear that the legislature intended to discourage "the marketing of children by limiting the profitability of such activity" and to provide penalties for fees which are "of questionable legitimacy."

Further, in 1 Kansas Law and Practice: Kansas Family Law § 6.14, p. 315 (1999), Professor Linda Elrod and Judge James Buchele offer this insight into independent adoptions and the "baby broker":

"The extent of regulation of independent adoptions varies in those other states which allow them. A few states have no legislative restrictions. Some will not process an adoption if the child is found through an 'intermediary' or 'baby broker' not licensed as an adoption agency. Some limit the amount of money that can be obtained by those involved in placing a child for adoption. Other states, in addition to limiting fees, require extensive background investigations of all adoptive parents. All states find that selling a human being, especially a child, violates public policy. Additionally, engaging in adoptions for profit fails to take into consideration the best interests standard that applies in placing children generally. The highest bidder rather than the 'best home' gets the child."

The Kansas Court of Appeals interpreted K.S.A. 59-2121 in *State v. Clark*, 16 Kan. App. 2d 552, 826 P.2d 925, *rev. denied* 250 Kan.

806 (1992). Although the question there was whether the statute was unconstitutionally vague, the case has considerable significance to the issue before us. Clark was convicted on one count of knowingly and intentionally receiving unauthorized consideration in connection with an adoption in violation of K.S.A. 1991 Supp. 59-2121. (NOTE: The statutory language in 1991 is the same as the current language. The only amendment between then and now was to change the penalty to conform with the Kansas Sentencing Guidelines grid.) The facts were stipulated to by the parties. Clark received a cash payment of $5,000 as consideration for his consent to the adoption of his baby. He admitted that the money was not to be used to pay any bill or expense incidental to the birth of the child or the adoption proceedings. He intended to use the $5,000 to pay some old bills, including some bad checks, traffic fines, and a phone bill, and to buy a car. 16 Kan. App. 2d at 552.

Clark first argued that the evidence was not sufficient to support the trial court's finding that he was guilty of the crime of receiving unauthorized consideration in connection with an adoption for the reason that the State had failed to prove that he had failed to report all consideration received or that he had failed to return any unauthorized payment following a judicial determination that the consideration was unauthorized. The Court of Appeals found no merit to this argument. The *Clark* court held that K.S.A. 59-2121(a) and (b) create separate crimes and that failure to report or reimburse any consideration given or received is not an element of the crime of intentionally and knowingly receiving or accepting clearly excessive fees or expenses in connection with an adoption under subsection (a). 16 Kan. App. 2d at 553.

Clark then argued that K.S.A. 59-2121 is unconstitutionally vague, pointing out that 59-2121(c) outlaws the receipt of unauthorized consideration in connection with an adoption only when the consideration is "clearly excessive." Clark argued that the "clearly excessive" standard was unconstitutionally vague. The *Clark* court also rejected this argument. In an opinion authored by retired Chief Justice David Prager, the panel reasoned:

"We find this contention to be without merit. K.S.A. 1991 Supp. 59-2121(c) makes it unlawful to intentionally and knowingly receive or accept clearly excessive

fees or expenses 'in violation of subsection (a).' Subsection (a) makes all receipt of consideration in connection with an adoption or placement for adoption illegal with six exceptions.

"It is clear that it was the legislative intent that all fees, expenses, or other consideration received not meeting one of the six exceptions provided are 'clearly excessive' and a violation of 59-2121(c) where the excessive fees or expenses are received or accepted *knowingly* or *intentionally*.

"Where the defendant *requests* or *receives compensation for* 'fees or expenses' which falls within one of the six exceptions, the defendant may still be guilty of violating the statute where the amount requested or received is not reasonable, actual, or necessary and the defendant acts knowingly and intentionally.

"The class B misdemeanor which arises when a defendant knowingly fails to list all consideration or disbursements in an accounting as required by subsection (b) is an entirely separate crime.

"The statute involved here is not unconstitutionally vague. It gives fair warning to those persons potentially subject to it and adequately guards against arbitrary and discriminatory enforcement. *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 943, 811 P.2d 1220 (1991).

"In this case, the defendant did not contend that his conduct came within any of the six statutory exceptions. In his statements to the police, defendant clearly acknowledged that the $5,000 he requested and received was not for the purpose of paying any fees or expenses incidental to the birth of the child or the adoption proceedings. He indicated he was aware that his conduct was unlawful. His acts were committed knowingly and intentionally." 16 Kan. App. 2d at 554.

Clark's conviction was affirmed. We denied review.

Defendant draws our attention to the fact that in K.S.A. 59-2121(a) the prohibited conduct is that "no person shall request, receive, give or offer to give any consideration in connection with an adoption," followed by six exceptions thereto. However, subsection (c) speaks only of "[k]nowingly and intentionally receiving or accepting clearly excessive fees." Thus, she argues, the legislature has only criminalized the prohibited conduct of receiving or accepting such fees. From there she contends that as she did not actually receive or accept the agreed upon fee, she did not violate K.S.A. 59-2121(c). Defendant treats "accepting" and "receiving" as being synonymous. We disagree. "Receive" is listed in subsection (a), but "accept" is not. One must conclude that the legislature intended to criminalize more than "receiving" excessive fees by adding "accepting." Otherwise "accepting" would be a redundant term pulled from the air rather than subsection (a).

*Clark* is helpful in addressing Brown's arguments because it explores the interplay between the various subsections of K.S.A. 59-2121. The facts of *Clark* are somewhat distinguishable from the case at hand because there the father actually received $5,000 in exchange for his consent to the adoption of his baby. In the case before us, defendant brokered the transfer of Pruitt's child for a fee. Like *Clark*, a child changed hands as a part of a deal involving consideration which was wholly unrelated to any of the exceptions listed in subsection (a). It is interesting that the example given in *Clark* states:

"Where the defendant requests or receives compensation for 'fees or expenses' which falls within one of the six exceptions, the defendant may still be guilty of violating the statute where the amount *requested or received* is not reasonable, actual, or necessary and the defendant acts knowingly and intentionally." (Emphasis supplied.) 16 Kan. App. 2d at 554.

As previously stated, the purpose of K.S.A. 59-2121 is to discourage the marketing of children by limiting the profitability of such activity. The welfare of children lies at the heart of the legislation. The fact that defendant had not yet received the money she bargained for in brokering the child when law enforcement officials stepped in does not change the nature of the transaction. The child had changed hands pursuant to the deal defendant brokered. Defendant sold Pruitt's child, much like the father sold his in *Clark*.

Defendant brokered a deal for the sale of the child. The deal was a three-way transaction. Buyers received the child in exchange for promised compensation to the child's mother and to defendant as the broker of the deal. Defendant requested a fee for her services in putting the deal together. Buyers, seller, and broker accepted the terms thereof and the child was transferred under the agreed-upon terms.

We conclude such conduct constituted "[k]nowingly and intentionally receiving or accepting clearly excessive fees or expenses in violation of subsection (a)," as set forth in K.S.A. 59-2121(c).

The judgment is affirmed.