(908 P.2d 198)
No. 74,068

In the Matter of the Adoption of D.R.B and L.J.B.,
minor children.

Opinion filed December 15, 1995.

*Robert D. Beall*, of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, for appellant.

*Michael Gibbens*, of Tonganoxie, for appellee.

Before PIERRON, P.J., RULON and GREEN, JJ.

GREEN, J.: The natural father of L.J.B. and D.R.B., minor children, appeals from a judgment of the trial court granting the stepfather the right to adopt the children. The trial court determined that the father's consent to the adoption was unnecessary because he had failed or refused to assume the duties of a parent during the 2 years before the filing of the adoption petition. On appeal, the father contends the trial court erred in determining that he knowingly failed to pay court-ordered child support. Additionally, the father contends that the trial court erred in determining that his consent was unnecessary. We disagree and affirm the judgment of the trial court.

In terminating the father's parental rights, the trial court made certain findings of fact. Consequently, our scope of review with regard to those findings is narrow. In an adoption case involving a challenge to the sufficiency of the evidence, our Supreme Court explained our standard of review as follows:

"When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances the reviewing court must review the evidence in the light most favorable to the party prevailing below. [Citation omitted.]" *Aslin v. Seamon,* 225 Kan. 77, 78, 587 P.2d 875 (1978).

The mother and the father of D.R.B., age 11, and L.J.B., age 8, were divorced on November 27, 1991. Although the father did not appear at the hearing, he was represented by retained counsel. The mother was granted sole custody of the children. The father was awarded supervised visitation rights with the children and was ordered to pay $568 per month for child support.

The father first argues that because he was never furnished with a copy of the divorce decree, which contained the support order, the trial court erred in determining that he had knowingly failed to pay court-ordered support for his two children. Although both the father and mother agreed that the father failed to pay any of the court-ordered support, the father testified that he had never seen the divorce decree. In determining that the father either knew

or should have known about the order for support, the trial court stated:

"I find from the evidence that the natural father knew, or should have known of his obligation to support these children then and there. If he didn't know the exact amount of money he was obligated to pay, it was his duty to check into and to find out. If he didn't want to contact Mr. Senecal because he owed him money, he could have contacted the Court and got a copy of the Divorce Decree from the Court. That he knew that was available to him, that he absolutely did nothing.

"I find that the mother on several occasions during this crucial two year period of time made mention of the fact that she needed money. That the children needed his support, told him if not the exact amount, from his own testimony, that his obligation was in excess of $500. That he did absolutely nothing with this knowledge that he had, he again set back and did absolutely nothing by way of making any support payments."

Moreover, the father testified that the mother reminded him of his obligation to provide financial support. The mother testified that she threatened to garnish the father's wages but that she did not do so because the father begged her not to, saying he would be fired. She also testified that she was deterred by the cost of filing an out-of-state garnishment when she might reap little or no benefit. In his defense, the father testified that the mother did not advise him of the exact amount ordered by the court but merely told him that he was to pay in excess of $500 each month. The maternal grandmother, who had maintained contact with the father despite the parties' divorce, also testified that she and the father discussed the father's obligation to provide financial support for D.R.B. and L.J.B.

Although the father and the mother, and later the father and the grandmother, offered conflicting testimony regarding discussions about the father's obligation to provide support, the trial court specifically resolved such conflicts in favor of the mother and grandmother. Because this court does not weigh the evidence or pass upon the credibility of the witnesses, this court must accept the trial court's conclusions regarding the credibility of the witnesses. See *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977). Consequently, the evidence indicates that the father was aware of the trial court's order that he pay support.

Additionally, the trial court determined that the father had the ability to provide the court-ordered support. The father's testimony supports this finding. On cross-examination, the father testified that he was employed as a civil engineer throughout the 2-year period in question, with the exception of 1 month. During the 2-year period, the father testified that he earned approximately $30,000 per year and that he was currently earning $40,000 per year. Based upon the testimony offered and the trial court's assessments of the witnesses' credibility, the trial court's finding that the father willfully failed to provide the court-ordered child support is supported by substantial competent evidence.

This finding is significant because the applicable statute, K.S.A. 59-2136(d), includes a rebuttable presumption that a father who fails to provide financial support, when financially able and when ordered by a court to do so, has failed or refused to assume his parental duties. K.S.A. 59-2136(d) states:

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. *In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent.*" (Emphasis added.)

Because of the statute's wording, the trial court determined that the rebuttable presumption was applicable in this case.

Turning next to the father's argument, we note that the father maintained that the presumption was rebutted by his contacts and visits with his children during the 2 years preceding the filing of the adoption petition. The undisputed evidence showed that the

father had numerous contacts with the children. He visited·them frequently on the weekends when he was working within driving distance of the Kansas City area. The most notable visits included a Labor Day trip to St. Louis to visit paternal relatives and trips to Worlds of Fun and Oceans of Fun. The father also attended some of his son's sporting events. Although the mother testified that the father's visits were somewhat sporadic, the parties agreed that the father visited the children at least 25 times during the 2-year period. The trial court, however, determined that the father's contacts with the children were incidental and should therefore be disregarded by the court in determining whether the father had failed or refused to assume the duties of a parent.

Whether a father's contacts with his children are sufficient to rebut a presumption raised by his failure to provide financial support is a question of statutory interpretation. Because interpretation of a statute is a question of law, our review is unlimited. *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, 283, 887 P. 2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

When interpreting a statute, the fundamental rule is that the intent of the legislature governs if that intent can be determined. 20 Kan. App. 2d at 283. K.S.A. 59-2136(d) was amended several times before reaching its present form. Before the statute was amended, virtually any contact with a minor child was sufficient to require parental permission for a stepparent adoption. In *In re Adoption of Steckman,* 228 Kan. 669, 620 P.2d 319 (1980), our Supreme Court found that a father's permission was required for a stepparent adoption although the father provided no financial support and had only minimal contacts with the children during the 2-year period before the petition for adoption was filed.

In discussing the history of K.S.A. 59-2136(d), our Supreme Court recently stated:

"After the enactment of the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.,* in 1990, K.S.A. 1990 Supp. 59-2136(d) required the consent of the father in a stepparent adoption 'unless such father has failed or refused to assume the duties of a parent for two consecutive years.' The statute included language providing that 'the court may disregard incidental visitations, contacts, communications or contributions' in determining whether a father's consent is

required. In 1991, 59-2136(d) was amended to require the relevant period of two consecutive years to be 'next preceding the filing of the petition for adoption' and to add a rebuttable presumption that the father has failed or refused to assume the duties of a parent if he has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, during the two-year period. L. 1991, ch. 167, § 1." *In re Adoption of S.E.B.*, 257 Kan. 266, 269, 891 P.2d 440 (1995).

As a result of those legislative changes, the legislative intent of K.S.A. 59-2136(d) undermines the precedential value of *Steckman*.

In a recent Court of Appeals decision, we stated that the 1991 amendment to 59-2136(d), enacting the presumption regarding the nonpayment of a substantial portion of child support, was added to make it more difficult for "parents who had not substantially assumed their parental obligations to interfere with the adoption of the affected child by a responsible stepparent." *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 99, 897 P.2d 181 (1995).

Additionally, the Supreme Court in *In re Adoption of S.E.B.* determined that the statutory presumption was inapplicable when the father was incarcerated. The court determined that the father was unable to pay the court-ordered support as a result of his incarceration. *S.E.B.*, however, is distinguishable from this case. Here, the presumption was clearly applicable because the father was employed. The father earned approximately $30,000 per year, yet he provided no financial support at all to his minor children. In addition, the father had no obstacles or circumstances, such as incarceration, that prevented him from paying the court-ordered support.

In *C.R.D.*, we determined that the father's consent was required for the stepparent adoption even though the father had furnished only nominal support to his children. There, we were called upon to determine what amount of support was "substantial" under the statute. Here, we are being asked to determine whether a father's contacts and visits with his children are sufficient to rebut the presumption raised by his total failure to furnish court-ordered support when he is financially able to do so. This case involves a question of first impression.

As stated earlier, the trial court determined that the father's contacts with his children were incidental and should be disregarded. "Incidental" has been defined as "casual, of minor importance, insignificant, and of little consequence." *In re Adoption of McMullen*, 236 Kan. 348, Syl. ¶ 1, 691 P.2d 17 (1984). Because of the number of contacts that the father had with his children during the required period, we determine that those contacts were more than incidental. As a result, the trial court should have considered those contacts. Even so, this does not end our analysis. When the legislature adopted the rebuttable presumption under K.S.A. 59-2136(d), the legislature was clearly stating that an important factor in determining if a father has failed to assume the duties of a parent was whether he has furnished financial support to his child. Whether a parent has failed or refused to assume such duties must be determined on a case-by-case basis. See *In re Adoption of Baby Boy B*, 254 Kan. 454, 463-464, 866 P.2d 1029 (1994).

In characterizing the father's contact with his children as nothing more than a weekend activity, the trial court stated:

"I don't believe that those contacts were significant and meaningful in the lives of these two children when coupled with the fact that he would not pay any support whatsoever during this period of time to them. It was more a weekend activity, something to do, I'll drop by and see the children, go to Worlds of Fun and take them back to the mother, in the meantime the mother gets no support from me . . . ."

Finally, in describing those contacts, the trial court stated that the father was able to enjoy the contacts with his children as a direct result of his failure to pay child support:

"The contacts the Natural Father had with his children were in the nature of fun or amusement times, which the Natural Father was able to accomplish because, among other matters, he was deliberately paying no child support as ordered by the Court in circumstances where he could and should have been paying such support. Such contacts did not equate to the discharge of parental duty in a consistent and timely fashion in the circumstances of this case."

Moreover, the father agreed that the mother sometimes furnished him with tickets so he could take the children to the Royals and the Chiefs games and to the Worlds of Fun outings.

Although the father's contacts with his children were more than incidental contacts, we agree with the trial court's conclusion that the contacts were insufficient to rebut the presumption. To conclude otherwise *i.e.*, that such contacts are all that is required to rebut the presumption, would make the legislature's addition of the presumption meaningless. " 'There is a presumption that the legislature does not intend to enact useless or meaningless legislation.' " *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). On the facts of this case, we conclude that the father's consent to the adoption was unnecessary.

Affirmed.