NOT DESIGNATED FOR PUBLICATION

No. 124,583

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of H.S.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed September 30, 2022. Affirmed.

*Jordan E. Kieffer*, of Jordan Kieffer, P.A., of Bel Aire, for appellant natural father.

*Megan S. Monsour* and *Krystle M. S. Dalke*, of Hinkle Law Firm LLC, of Wichita, for appellee adoptive stepfather.

Before WARNER, P.J., GREEN and HILL, JJ.

PER CURIAM: J.S. (Father) appeals the trial court's decision to terminate his parental rights and allow N.P. (Stepfather) to adopt H.S. (the child). Father argues that the trial court erred in concluding that he failed to assume the duties of a parent for two years immediately preceding the filing of the adoption petition. Also, Father contends that the trial court erred when it failed to address interference with visitation and contact by S.P. (Mother) and erred in its factual findings. Because clear and convincing evidence supports the trial court's findings, we affirm.

FACTS

The child was born in 2008. Mother and Father separated in 2008, when Mother was six months pregnant with the child, and divorced in 2011. In 2012, the parties lived

1

in California and a California court set child support at $591 per month. In 2014, Mother married Stepfather and moved to Kansas with the child.

Father opposed the move to Kansas in domestic court in California. The California court granted Mother's motion to relocate with the child in Kansas. The California court granted Father monthly parenting time, with Mother to pay Father's travel expenses. Mother generally did not follow the order to pay for Father's travel expenses. The one time that Mother did make arrangements, she chose a hotel that Father felt was unsafe for the child. Further, on several occasions, Mother told Father upon arrival that the child could not meet him because the child was sick.

Father proposed a change to child support. Father estimated travel expenses at $1,250 per visit. His proposal was that he would no longer pay $591 per month to Mother, and she would no longer have an obligation to spend $1,250 on his travel per month. According to Father, the parties' attorneys had a successful negotiation on this point, and he signed a stipulation. Father alleged that the California court modified his child support obligation so that he would pay his own travel rather than pay child support, but he provided no documents to support the claim. After being unable to produce such an order from California, Father requested the Kansas court to order that he pay his own travel expenses instead of child support. The Kansas trial court denied his request, stating: "'No basis for travel adjustments on child support because respondent has not traveled to see the child.'" Father has paid no child support since early 2015. As of July 2021, Father owed $68,716.03 in arrears in court-ordered child support.

Father claimed that he provided gifts directly to the child throughout this period, but no evidence supports this claim. The record corroborates only Father's claim of a one-time Christmas gift of roughly $600 in gift cards. Although the record is unclear whether there were any other gifts, no monies were paid as required by the child support orders and no in-kind help by way of food, clothing, medical payments, extracurricular

activities, or insurance occurred. Other than occasional small gifts given directly to the child, Father failed to pay anything toward the support of the child during the five years before Stepfather filed an action for adoption.

In 2016, the child started therapy to work through her parents' divorce and her anxiety. Disagreement between the parents continued regarding visitation, leading them to enter case management from 2017 to 2019. During case management, Father increasingly felt that Mother was conspiring to alienate the child from him, particularly by refusing visitation. Eventually, video calls over Skype, FaceTime, or Zoom dwindled to weekly audio calls, with Father receiving almost no updates regarding the child's well-being and daily activities, including medical appointments, school performance, and activities. When Father asked the child if she received gifts from him, she said that she was not getting them at all. Although Father asked Mother what he could provide for the child, Mother rarely responded.

Father has not had physical visitation with the child since June 2017. Father had the opportunity to speak to the child through scheduled phone calls but was often unavailable or only spoke with the child for two to three minutes. Sometimes Father's wife would answer the phone and the child would not get to speak with Father or only speak with him for two or three minutes. Father has not exercised his option for supervised visitation with the child since 2017.

Father's explanation for not attempting or arranging supervised visitation is Mother's alienation. His claim of alienation stemmed from Mother stopping the child from visiting Father in California around Thanksgiving of 2017. Mother canceled this Thanksgiving visit because she learned of pending criminal charges against Father, two felony counts of child abuse and one felony police evasion. Because of these charges, the case manager recommended supervised visitation only. The case manager also pushed Father to complete anger management therapy as contained in the court's order. Father

never completed the recommended therapy. The case manager testified at the hearing that it was "one hundred percent" Father's fault that he did not have visitation with the child and that he could have had visitation with the child in a "multitude of different ways."

In January 2020, Stepfather brought an action to terminate Father's parental rights and to adopt the child. Stepfather acknowledged that he had been married to Mother since June 2014. The suit asked the trial court to terminate Father's parental rights, alleging that Father abandoned or neglected the child; that Father was an unfit parent; that Father had not made reasonable efforts to financially support the child; and that Father had failed or refused to assume the duties of a parent for two consecutive years before the filing of the petition. Father objected pro se, arguing that Mother hindered his efforts to support, visit, and communicate with the child.

At the July 2021 evidentiary hearing on the adoption action, Stepfather testified first. He admitted that he did not notify Father when the child's residence changed. He claimed that he had concerns about safety but admitted that in the six years at the previous address there were no incidents.

Megan McKernan was the child's therapist from 2016 to 2017. McKernan testified that Father raised concerns that Mother was trying to alienate the child's behavior towards him. But McKernan never felt that Mother was alienating the child's feelings towards the Father.

Daniel Lampson was the appointed case manager from 2017 to 2019. He testified that Father had unsupervised visitation at first, but that changed when Mother discovered the pending criminal charges against Father. Lampson testified that Father participated in therapy and provided evidence of individual counseling, even though he did not do the anger management counseling that Lampson told him to do. Lampson also addressed Father's concerns that Mother was alienating the child, stating the following, "And the

4

fact was that he was being alienated, but I think that when [Mother] did what she did, she was justified in doing that. I think it made sense because of his [criminal charges]." Father testified that he moved to discharge Lampson for bias, and the trial court dismissed Lampson as case manager.

Mother testified that Father had weekly phone calls with the child, but Father did not always answer. But when cross-examined with e-mails Father sent about the phone calls, Mother was evasive in her answers and did not explain why she did not respond.

Father testified that he was working on a graduate degree in industrial psychology with a minor in child development and psychology, that he was a certified domestic violence advocate, and that he had a federal security clearance with the Department of Defense. He described how he and Mother met at a Bible study in California and how their relationship progressed from dating to marriage. Father described how, despite attempts at counseling, the relationship became unhealthy as Mother became physically and verbally abusive. He testified that even after they separated, he was able to see the child almost daily.

Father also testified that he had been trying to get additional visitation with the child since 2010. He stated that between 2014 and 2017 he had roughly 50 visits with the child in Kansas. He testified that, of those 50 visits, Mother prevented him from seeing the child between 10 and 12 times, stating that the child was sick. He stated that each trip was $1,500.

In addition, Father testified that he received a letter from the State of Kansas informing him that he owed child support. He stated that he wrote a letter back but never received a response. He testified that he tried to negotiate a settlement with Mother. Father disputed the support arrearages because he believed that he had an agreement to pay travel expenses instead of support. Father stated that he was giving Mother cash for

custody. He also testified that he sent cash to Mother and sent gift cards to the child. He stated that he recently sent the child about $600 in gift cards for Christmas, but they were returned.

Father further testified that Mother was refusing visitation and phone calls, explaining the decline in telephone contact with the child. For exhibits, Father submitted pictures, video, and audio recordings of his interactions with the child, including smiling photographs of visits where Father came to Kansas. Father testified that he loved the child unconditionally and that he did not want the trial court to approve the adoption.

The trial court terminated Father's parental rights and approved Stepfather's adoption petition.

Father timely appeals.

ANALYSIS

*Did Father fail to assume the duties of a parent for two consecutive years immediately preceding the filing of the adoption petition?*

Father argues that the trial court erred in its fact-finding. K.S.A. 2021 Supp. 59-2136(h)(3) creates a rebuttable presumption that if a father who is financially able to pay child support has knowingly failed to pay a substantial portion of the court-ordered child support for the two years immediately preceding the filing of the adoption petition, then such father has failed or refused to assume the duties of a parent. Father claims that he overcame this rebuttable presumption because he had more than incidental contact with the child. He argues that the trial court erred because (1) it did not give sufficient weight to his phone calls and attempts to call and (2) the trial court did not fully consider Mother's attempts to alienate the child from him.

6

A trial court's finding under K.S.A. 2021 Supp. 59-2136(h)(1)(G) that a parent has refused or failed to assume parental duties for two years before the filing of the petition for stepparent adoption is a finding of fact that will be reviewed on appeal to determine if it is supported by substantial competent evidence. See *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011).

When a trial court terminates parental rights based on factual findings made under K.S.A. 2021 Supp. 59-2136(h)(1), those factual findings will be reviewed on appeal to determine if, after viewing all the evidence in the light most favorable to the prevailing party, the findings were supported by clear and convincing evidence. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021).

When determining whether factual findings are supported by clear and convincing evidence, an appellate court does not weigh conflicting evidence, pass on the witnesses' credibility, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. at 806.

The United States Constitution's Due Process Clause of the Fourteenth Amendment provides substantive protection for parents when they have assumed parental duties. Nevertheless, when parents have not accepted some measure of responsibility for their child's future, the Constitution will not protect the parent's mere biological relationship with the child. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1060, 190 P.3d 245 (2008).

Adoption statutes are strictly interpreted in favor of maintaining the rights of the natural parents where the statute is being used to terminate the right of a natural parent without consent. *In re Adoption of C.L.*, 308 Kan. 1268, 1279-80, 427 P.3d 951 (2018). The party seeking to terminate a parent's rights has the burden of proving by clear and

convincing evidence that termination is appropriate under K.S.A. 2021 Supp. 59-2136. *In re Adoption of C.L.*, 308 Kan. at 1278.

K.S.A. 2021 Supp. 59-2136(h)(1)(G) authorizes the termination of a natural father's parental rights without his consent if the trial court finds clear and convincing evidence that the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the adoption petition. Under K.S.A. 2021 Supp. 59-2136(h)(3), the trial court may presume the failure or refusal to assume parental duties listed at (h)(1)(G) if the father has knowingly not paid a substantial portion of his court-ordered child support for those two years when financially able to do so.

Father did not pay child support for more than two consecutive years immediately preceding when Stepfather filed his adoption action, a fact not in dispute. Father testified that he believed he had an arrangement where he would pay his own travel expenses instead of paying child support. Nevertheless, this is a crowning non sequitur. A non sequitur is an argument in which, on the face of it, there is no connection between the claim and the evidence. Here, the evidence shows that Father made no trips to Kansas since 2017 and failed to pay child support since early 2015. Thus, Father's claim does not follow, that is, his claim (he was no longer required to pay child support if he covered his travel expenses to Kansas) is not a reasonable inference from, or even related to, the evidence, which was supposed to have supported his claim.

Also, as the trial court noted, the record does not contain any orders from either a California court or a Kansas court to support this claim. Thus, the trial court correctly applied the presumption under K.S.A. 2021 Supp. 59-2136(h)(3) that Father had failed or refused to assume parental duties.

But it is possible for a father to overcome the rebuttable presumption. The trial court must determine whether a father's contacts and visits with his children are sufficient to rebut the presumption raised by his failure to furnish court-ordered support when he is financially able to do so. *In re Adoption of D.R.B.*, 21 Kan. App. 2d 790, 795, 908 P.2d 198 (1995). On this point, K.S.A. 2021 Supp. 59-2136(h)(2) instructs the trial court that it shall consider all relevant surrounding circumstances and may disregard incidental visitations, contacts, communications, or contributions.

Father claims that the evidence of weekly phone calls sufficiently rebuts the presumption that he failed or refused to assume parental duties. But the testimony related to phone calls also indicated that the child would call Father and Father would not be available to receive the call. Sometimes Father's wife would answer the phone. The child would not get to speak with Father or only speak with him for two or three minutes. Father's testimony, on the other hand, was that Mother ended the child's phone calls after a few minutes. We do not reweigh the evidence or determine witness credibility. *In re Adoption of Baby Girl G.*, 311 Kan. at 806. The determination of how many phone calls occurred and who was responsible for their brevity is a factual situation beyond our standard of review. By asking us to revisit the issue of phone calls, Father is asking us to reweigh the evidence. Father's argument, however, fails because we do not assign greater weight to evidence in the record after the trial court has already considered and weighed the evidence.

Father's second claim of error is that the trial court disregarded Mother's intentional alienation of the child from Father. Evidence that a parent interferes with the other parent's right to maintain contact with the child can be considered in determining whether the parent has failed to assume parental duties. *In re Adoption of P.N.S.*, No. 117,331, 2017 WL 4082293, at *5 (Kan. App. 2017) (unpublished opinion); see *In re Adoption of F.A.R.*, 242 Kan. 231, 237, 747 P.2d 145 (1987). But Stepfather's brief points out that Father's examples of alienation do not apply to the relevant period. Father

contends that Stepfather, Mother, and the child changed addresses in August 2020 without telling him. He also points out that $600 in gift cards were returned to him after he sent them to the child for Christmas in December 2020. Both events happened after Stepfather had filed his petitioned for adoption in January 2020. Neither event would explain why Father failed or refused to assume parental duties in the two consecutive years immediately before Stepfather brought his petition for adoption.

Ultimately, Father is asking us to reweigh the evidence, which is outside our function of review. The trial court here determined witness credibility, weighed the evidence, and made findings which are all supported by clear and convincing evidence. Father has failed to point to any instance where the trial court ignored evidence or found a fact which was not supported by evidence. As a result, we affirm the trial court terminating Father's parental rights and granting the child's adoption by Stepfather.

Affirmed.