NOT DESIGNATED FOR PUBLICATION

Nos. 127,101
127,102

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of S.L. and J.L.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sheridan District Court; KEVIN BERENS, judge. Submitted without oral argument. Opinion filed July 26, 2024. Affirmed.

*Andrew J. Walter*, of Walter, Walter & Peterson, of Norton, for appellant stepmother.

*Michelle Mahieu*, of Mahieu Elder Law P.A., of Dodge City, for appellee natural mother.

Before MALONE, P.J., HURST and COBLE, JJ.

MALONE, J.: Stepmother appeals the district court's orders denying her petitions to adopt S.L. and J.L., minor children, without Mother's consent. Stepmother sought a finding that Mother had failed to assume her parental duties for two consecutive years immediately before the filing of the petitions under K.S.A. 2023 Supp. 59-2136(h)(1)(G). On appeal, Stepmother claims the district court erred in finding that Stepmother failed to prove by clear and convincing evidence that the rebuttable presumption of unfitness under K.S.A. 2023 Supp. 59-2136(h)(3) applied based on Mother's failure to pay court-ordered child support. Even if the statutory presumption of unfitness does not apply, Stepmother claims the district court failed to correctly analyze whether Mother assumed her parental duties during the relevant statutory period. After thoroughly reviewing the record and the parties' briefs, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Stepmother and Father began a romantic relationship in March 2021 and married in March 2022. Before marrying Stepmother, Father had two minor children from a marriage with Mother: J.L., born in 2016, and S.L., born in 2018. On December 16, 2020, the district court granted Father sole legal and residential custody of the children. It also ordered Mother to pay $199 per month to Father in child support. Mother was awarded parenting time every other weekend from Friday evening to Sunday evening.

On August 1, 2022, the district court entered an order in response to Father's emergency motion to suspend Mother's parenting time. The emergency motion is not part of the record on appeal. In the journal entry, the district court prohibited Mother from having "any parenting time, visitation or other communication with the minor children."

On March 7, 2023, Stepmother filed petitions for adopting both minor children. Father consented to the adoption petitions. In the petitions, Stepmother alleged that Mother's consent to adopt the children was unnecessary because she failed to pay child support for two years despite being financially able to do so. The cases were consolidated for hearing. The district court held a hearing on the petitions for adoption on September 18 and 19, 2023. Much of the hearing centered on Mother's nonpayment of child support in the two years preceding the petitions, from March 2021 to March 2023.

Stepmother called Mother to testify. Mother testified that she had been employed for the two years just before the petitions, though she took a six-week maternity leave in July 2021 for the birth of another child not subject to this litigation. While Mother agreed that she was employed between December 2020 and March 2023, her testimony on her employment history was varied and often unspecific. Mother testified that she worked for a company called Grace Team in December 2020, and in March, April, and June 2021. Then Mother explained that she actually worked for a different company called Mosaic

2

during those times and worked for Grace Team after the birth of her child in July 2021. Mother testified that she began working for Grace Team "probably four months after I'd been on the six-week maternity leave with [her newborn child] and then I went back to work with Grace Team." Mother was terminated from Grace Team around July 2022. At some unspecified point after about July 2022, Mother began working for a company called Advena, where she worked at the time of the hearing.

While working for Mosaic, Mother made approximately $11.75 to $12 per hour and worked 21 hours a week plus another 14 hours for one weekend out of every two-week period. After Mother had a child around July 2021, she called off work an unspecified but "numerous" amount of times to care for her newborn. When Mother worked for Grace Team, she made $20 per hour and worked at least 20 hours per week. Mother did not testify to her wages working for Advena. Mother admitted to not paying child support until May 8, 2023, after the petitions had been filed.

Stepmother also testified. She agreed that Mother's first child support payment occurred in May 2023. Stepmother alleged that Mother had not regularly exercised her parenting time between March 7, 2021, and August 1, 2022. She estimated that Mother failed to exercise her parenting time approximately 10 times in that period. Stepmother testified that Mother called the children on the phone or in video sometimes multiple times a week and other times she would not call at all in a month's time.

Stepmother testified that on July 6, 2022, Mother requested to meet Stepmother and Father, and the meeting took place at a local restaurant. During the meeting, Mother had two margaritas and finished some of Stepmother's margarita. Mother told Stepmother and Father that she was having relationship troubles with her boyfriend at the time and had moved out and was living between her aunt's and her brother's houses. The next day, Mother contacted Stepmother and Father to say that she had just gotten out of jail because she wrecked her car. Mother informed them that she had been "in jail for a DUI."

3

Father testified and agreed with Stepmother that Mother missed around 10 chances to exercise parenting time from March 2021 to March 2023. He stated that Mother had attended one extracurricular event for the children since 2021. Stepmother called several other witnesses including Mother's brother; the children's former daycare provider; a social worker from the children's school; a second-grade teacher from the school; a former shift charge nurse who worked with Mother; the children's paternal grandmother; and the Chief of the Scott City Fire Department who testified that he responded to a call in July 2022 when Mother's vehicle had run off the road and Mother admitted she had been drinking. The social worker testified that the children called Stepmother "mom" and that one of the children wanted Stepmother to adopt her.

Mother testified a second time on her own behalf. She admitted she missed some parenting time, but estimated it was about five times because they usually rescheduled. Mother testified that she spent most of her allotted parenting time with the children and had a good relationship with them. She testified that the children enjoyed playing in the yard with their little brother, dressing up for holidays, and spending time with their great-grandmother and the extended family. Mother also testified that she FaceTimed with the children regularly. Mother's grandmother, the children's great-grandmother, testified that Mother and the children played together regularly, "give hugs," have fun together, do art projects, and that Mother loves the children.

Along with the testimony, the parties admitted into evidence several exhibits including text messages between the parties, the complaint and diversion agreement stemming from Mother's car crash in July 2022, the journal entry ordering Mother to pay child support and awarding parenting time every other weekend, the journal entry terminating Mother's parenting time on August 1, 2022, and artwork from the children. Included in the exhibits was a text message from Mother to Father on December 23, 2020, indicating that she, "[b]arely . . . ma[d]e enough to pay [her own] bills" so she would not pay child support to Father.

After hearing the evidence, the district court took the matter under advisement. On October 10, 2023, the district court filed an order in each case denying Stepmother's petitions for adoption without Mother's consent. The district court found that Stepmother failed to prove by clear and convincing evidence that the rebuttable presumption of unfitness under K.S.A. 2023 Supp. 59-2136(h)(3) applied based on Mother's failure to pay court-ordered child support, mainly because there was insufficient evidence about Mother's monthly expenses and her financial ability to pay the support. The district court found that Stepmother did not prove by clear and convincing evidence that Mother had failed or refused to assume her parental duties for two consecutive years immediately before the filing of the adoption petitions. Stepmother timely appealed the district court's judgment in each case. This court consolidated the appeals on March 14, 2024.

On appeal, Stepmother claims the district court erred in finding that Stepmother failed to prove by clear and convincing evidence that the rebuttable presumption of unfitness under K.S.A. 2023 Supp. 59-2136(h)(3) applied based on Mother's failure to pay court-ordered child support in the two years immediately before the adoption petitions were filed. Assuming the statutory presumption applies, Stepmother claims that Mother failed to rebut it. Even if the statutory presumption of unfitness does not apply, Stepmother claims the district court failed to correctly analyze whether Mother assumed her parental duties during the relevant statutory period.

Mother asserts the district court correctly found that the statutory rebuttable presumption of unfitness did not apply because Stepmother failed to prove Mother's ability to pay the court-ordered child support by clear and convincing evidence. Mother also asserts the district court correctly found that Stepmother failed to prove by clear and convincing evidence that Mother failed or refused to assume her parental duties for two consecutive years immediately before the filing of the adoption petitions.

Mother has a constitutionally recognized liberty interest in parenting her children—a right deemed to be fundamental. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). The district court recognized this right by requiring Stepmother to prove her claims by clear and convincing evidence. See K.S.A. 2023 Supp. 59-2136(h). Clear and convincing evidence is evidence sufficient to establish that the truth of the facts asserted is highly probable. *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018). Stepmother sought to terminate Mother's parental rights under K.S.A. 2023 Supp. 59-2136(h)(1)(G) which provides that parental rights can be terminated when "the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition." K.S.A. 2023 Supp. 59-2136(b) provides that "the provisions of this section applicable to the father also shall apply to the mother and those applicable to the mother also shall apply to the father."

To the extent, if any, that Stepmother's claims require statutory interpretation, this court has unlimited review. *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021). Whether a person has failed or refused to assume the duties of a parent for the two years immediately before the filing of a petition for adoption is a question of fact based on all the surrounding circumstances. *In re Adoption of J.M.D.*, 293 Kan. 153, 167, 260 P.3d 1196 (2011). Review of a district court's decision to terminate parental rights and grant a petition for adoption requires an appellate court to determine whether the factual findings of the district court are supported by substantial competent evidence. 293 Kan. at 170-71. "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.'" *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In reviewing the evidence, the appellate court will not reweigh the evidence or pass on the credibility of witnesses. *In re Adoption of J.M.D.*, 293 Kan. at 171. "Rather, the appellate court should review the facts of the case in the light most favorable to the prevailing party below to ascertain whether the trial court's decision is properly supported by substantial competent evidence." 293 Kan. at 171.

## DID THE REBUTTABLE PRESUMPTION OF UNFITNESS APPLY?

Stepmother first claims the district court erred in finding that the presumption of unfitness in K.S.A. 2023 Supp. 59-2136(h)(3) did not apply. That subsection provides:

> "In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, *when financially able to do so*, for a period of two years immediately preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent." (Emphasis added.)

Under this subsection, a rebuttable presumption arises that Mother has failed or refused to assume her parental duties for two consecutive years, if Stepmother proves that (1) Mother had knowledge of the child's birth, (2) Mother knowingly failed to provide a substantial portion of the child support, (3) the child support is required by judicial decree, (4) Mother was financially able to pay the child support, and (5) the nonpayment of support was for two years immediately before the adoption petition was filed. K.S.A. 2023 Supp. 59-2136(h)(3). Stepmother must prove each element by clear and convincing evidence. See *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010) (requiring petitioners to prove by clear and convincing evidence all elements in the statutory subsection under which they seek to terminate parental rights is consistent with Kansas' historical adherence to the parental preference doctrine).

The district court found that Stepmother did not carry her burden to prove by clear and convincing evidence that the presumption in K.S.A. 2023 Supp. 59-2136(h)(3) applied because Stepmother did not produce evidence of Mother's expenses. Thus, Stepmother did not prove that Mother was financially able to pay child support.

7

The evidence is undisputed that Mother paid no court-ordered child support during the relevant statutory period from March 2021 to March 2023. As a result, Stepmother argues that evidence of income alone is enough to trigger the presumption in K.S.A. 2023 Supp. 59-2136(h)(3), and she had no burden to adduce evidence about Mother's expenses. But Stepmother did not even establish the full amount of Mother's income during the relevant statutory period. Stepmother claims that Mother was employed by Mosaic from December 2020 until September 2021 where she made about $11.75 to $12 per hour, and then she was employed by Grace Team where she made about $20 per hour. But Mother testified that her employment with Grace Team was terminated around July 2022. There was no testimony about Mother's income while working for Advena after her termination from Grace Team. Thus, there is a substantial period between July 2022 and March 2023, where Mother admitted to being employed, but there was no evidence adduced as to Mother's income during that time. Plus, Mother testified that in July 2021, she had another child and went on a six-week maternity leave. But there was no evidence as to whether that leave was paid or unpaid.

Stepmother points to cases in which she asserts that evidence of income alone was enough to trigger the statutory presumption. For example, in *In re Adoption of D.R.B.*, 21 Kan. App. 2d 790, 795, 908 P.2d 198 (1995), this court found that "[h]ere, the presumption was clearly applicable because the father was employed. The father earned approximately $30,000 per year, yet he provided no financial support at all to his minor children." But after finding that the father was employed and made $30,000 per year, this court then found that "[i]n addition, the father had no obstacles or circumstances, such as incarceration, that prevented him from paying the court-ordered support." 21 Kan. App. 2d at 795. So this court acknowledged that obstacles or circumstances can prevent the application of the presumption. Proof of income alone is not necessarily dispositive.

But even if Stepmother provided clear and convincing evidence of Mother's income during the relevant statutory period, she provided almost no evidence of Mother's

8

expenses during the same period. K.S.A. 2023 Supp. 59-2136(h)(3) provides a statutory presumption of unfitness if a parent fails to pay court-ordered child support *when financially able to do so*. As the district court found, "there was no testimony regarding [M]other's monthly expenses or her ability to pay child support for the two years preceding the filing of the petition for adoption." The district court pointed to the text message from December 23, 2020, where Mother told Father that she, "[b]arely . . . ma[d]e enough to pay [her own] bills" so she would not be able to pay child support to Father. The district court also acknowledged that Mother had another child in July 2021.

The district court found that the burden was on Stepmother to show by clear and convincing evidence that Mother had an ability to pay child support for the two years immediately before the adoption petitions were filed and that Stepmother failed to meet that burden. This finding was supported by substantial competent evidence viewed in the light most favorable to Mother. Stepmother did not prove by clear and convincing evidence that the K.S.A. 2023 Supp. 59-2136(h)(3) presumption applied. Because Stepmother failed to show that the statutory presumption of unfitness applied, we need not address her claim that Mother failed to rebut it.

### DID THE DISTRICT COURT CORRECTLY ANALYZE WHETHER MOTHER ASSUMED HER PARENTAL DUTIES DURING THE RELEVANT STATUTORY PERIOD?

Even if the statutory presumption of unfitness does not apply, Stepmother claims the district court failed to correctly analyze whether Mother assumed her parental duties during the relevant statutory period under K.S.A. 2023 Supp. 59-2136(h)(1)(G). Stepmother argues that Mother did not have significant contact with the children between March 2021 and March 2023. Stepmother also argues that the district court did not discuss Mother's failure to pay child support in its K.S.A. 2023 Supp. 59-2136(h)(1)(G) analysis and thus implies that the district court ignored this evidence. Mother contends that the district court correctly found that Stepmother failed to prove by clear and

convincing evidence that Mother failed or refused to assume her parental duties for two consecutive years immediately before the filing of the adoption petitions.

As we said earlier, Stepmother sought to terminate Mother's parental rights under K.S.A. 2023 Supp. 59-2136(h)(1)(G) which provides that parental rights can be terminated when the parent has failed or refused to assume the duties of a parent for two consecutive years immediately before the filing of the adoption petition. K.S.A. 2023 Supp. 59-2136(h)(2) provides that in finding whether parental rights shall be terminated, the court shall consider all the relevant surrounding circumstances and may disregard incidental visitations, contacts, communications, or contributions.

The district court found that between December 2020 and June 2022, Mother had court ordered parenting time every other weekend. Her last contact with the children was in June 2022, and in August 2022 Mother was prohibited by court order from exercising parenting time or contacting the children. But the district court found that Stepmother failed to show that Mother's parenting time was merely incidental, and that the evidence showed that the children and Mother had a "relationship and bond although it may have diminished since their last contact."

To support her argument that the district court incorrectly applied the evidence to the statute, Stepmother points to her own and Father's testimony that Mother missed about 10 weekends of visitation from March 2021 to March 2023. According to Stepmother and Father, Mother often had other people watch the children on weekends when she exercised her visitation rights with them. Stepmother also points to her own testimony that the children craved attention from Mother, but she did not provide it. In making her argument, Stepmother is asking this court to disregard contradictory evidence presented to the district court and to view the evidence in the light most favorable to her. But we must not reweigh the evidence or pass on the credibility of witnesses, and we

10

must view the evidence in the light most favorable to Mother as the prevailing party below. *In re Adoption of J.M.D.*, 293 Kan. at 171.

Substantial competent evidence viewed in the light most favorable to Mother supports the district court's findings. Mother testified that she did not miss 10 weekends but missed "like 5." Mother testified that she called the children and that when she had the children for parenting time, she would include interactive activities like "water parks, things like that." Mother's grandmother testified that Mother was a good mom who loved the children and that the children would "give hugs" and that Mother and the children would do "fun things" like art projects. This evidence supports the district court's finding that Mother and children had a relationship and bond, and that Mother's parenting time was more than incidental. Mother testified that she loved the children. Stepmother testified that the children craved Mother's attention. While Stepmother added that Mother did not provide that attention, in the light most favorable to Mother this testimony supports a finding that the children had a bond with Mother and sought her attention.

Stepmother also argues that the district court erred when it "excused" Mother's lack of contact with the children after August 2022 because of the court order prohibiting contact. But the district court merely found as a matter of fact that the order prohibited Mother from assuming her parental duties during the last eight months of the relevant statutory period under K.S.A. 2023 Supp. 59-2136(h)(1)(G). The district court made no legal conclusion that the order "excused" Mother's lack of contact with the children, and it could still consider Mother's contact with the children before the order was entered.

Stepmother claims that Mother's failure to pay child support weighs against her. "[A] district court is not precluded from considering a natural [parent]'s unfavorable child support payment performance as part of 'all of the surrounding circumstances,' even though all of the conditions for the statutory presumption have not been met." *In re Adoption of J.M.D.*, 293 Kan. at 167. While correct that the district court could consider

11

Mother's failure to pay child support, Stepmother does not show that failing to pay child support alone is always dispositive to the failure to assume the duties of a parent. And as we have discussed, Stepmother provided almost no evidence of Mother's expenses and did not show that Mother failed to pay child support when financially able to do so.

The record does not support Stepmother's claim that the district court failed to correctly analyze whether Mother assumed her parental duties during the relevant statutory period from March 2021 to March 2023 under K.S.A. 2023 Supp. 59-2136(h)(1)(G). Instead, substantial competent evidence viewed in the light most favorable to Mother as the prevailing party below supports the district court's findings. Although Mother missed some visits with the children and failed to pay child support, the evidence shows that she maintained contact with the children and tried to maintain a parental bond during most of the relevant time period. Stepmother is asking us to reweigh the evidence presented below which is beyond our charge as an appellate court.

In closing, we reiterate the well-settled law that Mother has a constitutionally recognized fundamental liberty interest in parenting her children that can only be severed with clear and convincing evidence of unfitness. See *Troxel*, 530 U.S. at 65. At the same time, by all accounts, Stepmother has formed a caring, loving relationship with the children. There is no doubt that the children benefit from this important relationship, and Stepmother can continue to exercise her positive influence over the children. But for the reasons stated in this opinion, we find no basis to overturn the district court's judgment denying Stepmother's petitions for adoption without Mother's consent.

Affirmed.